**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Penelope Dee Mullen, | No. CV-20-08174-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Penelope Dee Mullen's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 24, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 30, Def. Br.), and Plaintiff's Reply (Doc. 37, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 19, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 20–30) as upheld by the Appeals Council (R. at 1–5).

I.   **BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on April 14, 2016 for a period of disability beginning on November 1, 2014. (R. at 20.) Plaintiff is not covered past her Date Last Insured—September 30, 2017. (R. at 20.) Her claim was denied initially on October 13, 2016, and upon reconsideration on February 13, 2017. (R. at 20.) On May 16, 2019, Plaintiff appeared before the ALJ for a hearing regarding her claim. (R. at 20.)

On June 4, 2019, the ALJ denied Plaintiff's claim (R. at 20–30), and on May 14, 2020, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–5.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairment of degenerative changes of the lumbar spine. (R. at 22.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 30.) In so doing, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 24.) Upon reviewing the record, the ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform light, skilled work. (R. at 24–29.) Accordingly, the ALJ found that Plaintiff can perform her past relevant work as a vocational instructor. (R. at 28.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations

omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the assessment of treating physician James Arthur, M.D., and giving great weight to the opinions of examining physician Adam Dawson, D.O., and the two state agency reviewing physicians (Pl. Br. at 1), and (2) the ALJ erred in his analysis of Plaintiff's symptom testimony (Pl. Br. at 2). The Court resolves these arguments in turn.

### A.   The ALJ provided sufficient reasons to give more weight to Dr. Dawson's assessment than Dr. Arthur's assessment.

Dr. Arthur was Plaintiff's "long-term primary care physician" who evaluated

Plaintiff in May 2017—almost three years after the alleged onset date—for "referral to back pain specialist." (Pl. Br. at 6 (citing R. at 394, 398–99).) He opined that, on account of "long-standing lumbar [degenerative disc disease with radicular symptoms]," Plaintiff could sit for six hours in an eight-hour workday and stand or walk for less than two hours in an eight-hour workday. (R. at 403, 405.) He also stated Plaintiff has "moderately severe" pain that would often interfere with attention and concentration. (R. at 401–402.) Dr. Arthur updated his assessment in April 2019—four and a half years after the alleged onset date and well past the Date Last Insured. (R. at 1058–59.) Dr. Arthur opined that Plaintiff could stand or walk for at least two hours in an eight-hour workday but could sit for only four hours. (R. at 1055.) He again stated that Plaintiff had "moderately severe" pain. (R. at 1058–59.)

Dr. Dawson examined Plaintiff in September 2016. (R. at 375–81.) While he noted that Plaintiff reported "chronic low back pain thought to be degenerative in nature" and "decreased range of motion," he opined that Plaintiff had no restrictions in standing, walking, or sitting. (R. at 379–80.) Two state agency nonexamining physicians concurred, rating Plaintiff's capacity as capable of light work. The ALJ gave great weight to these three opinions and little weight to Dr. Arthur's assessment.

"In conjunction with the relevant regulations, [the Ninth Circuit] has … developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ is obligated to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The general rule is that the greatest evidentiary weight is given to the opinion of a treating physician; lesser weight is given to that of a non-treating, examining physician; and the opinion of a non-treating, non-examining physician is given the least weight, relatively. *Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 1527(c)(1). Treating physicians are given this deference because they are

"employed to cure and [have] a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) (stating that treating sources "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"). Relevant factors for the ALJ to consider in assigning weight to the opinion include the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the extent the opinion is supported by medical signs and laboratory findings, consistency with the record as a whole, the specialization of the physician, and "other factors." 20 C.F.R. §§ 404.1527(c)(2)–404.1527(c)(6).

When a conflict exists between medical opinions, the ALJ must resolve it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). However, if in resolving inconsistent medical opinions, the ALJ chooses to reject or assign minimal weight to an opinion of a treating or examining physician, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence in the record for doing so." [1] *Lester*, 81 F.3d at 830 (internal quotations and citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other

---

[1] In 2017, the Social Security Administration amended the Regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new Regulations apply to claims filed on or after March 27, 2017. *Id.* In *Woods v. Kijakazi*, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the new Regulations. --- F. 4th ---, 2022 WL 1195334, at *6 (9th Cir. Apr. 22, 2022). Here, because Plaintiff filed her application for Disability Insurance Benefits before March 27, 2017, neither the new Regulations nor the holding in *Woods* apply to the Court's evaluation of the ALJ's decision.

1   evidence in the record." *Thomas*, 278 F.3d at 957. An ALJ may properly reject "the opinion

2   of any physician, including a treating physician, if that opinion is brief, conclusory, and

3   inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see Batson v.*

4   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a

5   treating physician's opinion that "was in the form of a checklist, did not have supportive

6   objective evidence, was contradicted by other statements and assessments of [claimant's]

7   medical condition, and was based on [claimant's] subjective descriptions of pain").

8        The ALJ rejected Dr. Arthur's assessment of Plaintiff in April 2019 because it was

9   completed a year and a half after the Date Last Insured and gave no indication if it applied

10   earlier—a sufficiently specific and legitimate reason to reject that assessment. (R. at 27.)

11   As for Dr. Arthur's May 2017 assessment of Plaintiff, the ALJ notes that Dr. Arthur, who

12   is not a spine specialist, based his opinions on the conclusion that Plaintiff's treatment

13   "failed," but the medical record does not support that conclusion. (R. at 27.) Moreover, the

14   ALJ states that Dr. Arthur based his opinions on Plaintiff's subjective complaints but did

15   not cite any clinical findings or objective medical evidence to support his opinions. (R. at

16   27.) By contrast, the ALJ states that Dr. Dawson cited specific clinical findings and

17   objective medical evidence to support his opinions after his examination of Plaintiff. (R. at

18   26.) The state agency reviewing physicians—to whose opinions the ALJ also gave great

19   weight—similarly relied on Dr. Dawson's September 2016 examination of Plaintiff over

20   Dr. Arthur's May 2017 and April 2019 assessments of Plaintiff. (R. at 26.) The Court finds

21   the ALJ provided sufficient specific and legitimate reasons to give great weight to Dr.

22   Dawson's assessment and little weight to Dr. Arthur's assessment, and the ALJ adequately

23   explained how the non-examining state agency physicians' opinions were consistent with

24   the clinical findings in the record. Plaintiff thus has not identified any error on the part of

25   the ALJ in his weighing of the medical evidence.

26        **B.    The ALJ did not err in assessing Plaintiff's symptom testimony.**

27        At the hearing before the ALJ on May 16, 2019, Plaintiff testified to various

28   functional limitations due to lumbar spine condition—most notably that she could lift no

more than 15 to 20 pounds, sit for no more than 25 minutes at a time, stand for no more than 20 minutes, and walk no more than one block. (R. at 22–27, 49.) The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 25.) Specifically, the ALJ rejected Plaintiff's symptom testimony because (1) the objective physical examinations illustrate Plaintiff's limitations are not debilitating, (2) the course of treatment does not corroborate Plaintiff's allegations of disabling symptoms and limitations, and (3) Plaintiff's description of her daily activities is not consistent with her complaints of disabling symptoms and limitations. (R. at 25–26.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

"In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. Additionally, if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless. *See Carmickle*, 533 F.3d at 1162.

The ALJ's reasons for rejecting Plaintiff's testimony are sufficiently specific, clear,

and convincing. In considering the objective medical examinations, the ALJ observed that Donald Hales, M.D.—plaintiff's spine surgeon and thus an expert in the source of Plaintiff's alleged pain—concluded that Plaintiff's spinal fusion healed appropriately, making the source of her reported pain unclear. (R. at 25.) In the physical examination by Dr. Dawson, discussed above, he concluded that Plaintiff had normal strength in the upper and lower extremities (including grip strength), a normal gait, and the ability to balance on either foot, stoop, and switch from standing to sitting—all without assistance or difficulty. (R. at 26.) Thus, the level of Plaintiff's reported limitations is inconsistent with objective medical examinations.

The ALJ also observed that Plaintiff did not follow through with treatment recommendations. (R. at 25–26.) The only time Plaintiff sought physical therapy was in May 2018, three years after her surgery and a year after her Date Last Insured, even though Plaintiff's surgeon recommended she exercise daily in 2016. (R. at 25.) Plaintiff also declined to seek injections for her reported pain, even though her pain management physician recommended them in January 2017. (R. at 26.) The Court agrees with the ALJ that "the frequency and extent of treatment sought by the claimant is not comparable with the degree of her subjective complaints"—a clear and convincing reason to question the level of Plaintiff's reported limitations. (R. at 26.)

Finally, Plaintiff reported driving and leaving her home at least once daily to run errands—inconsistent with the reported inability to be active for more than 20 minutes. (R. at 26.) Plaintiff also reported simultaneously to have problems engaging in social activities but the ability to travel, spend time with family, and meet friends at a monthly embroidery club. The ALJ again properly discounted Plaintiff's symptom testimony for this reason. In sum, Plaintiff has failed to show that the ALJ erred in evaluating her symptom testimony.

**IT IS THEREFORE ORDERED** affirming the June 4, 2019 decision of the Administrative Law Judge (R. at 20–30), as upheld by the Appeals Council on May 14, 2020 (R. at 1–5).

1    **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

2  consistent with this Order and close this case.

3    Dated this 5th day of May, 2022.

4

5    Honorable John J. Tuchi
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28